**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4459
_____

GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC LANCASTER, LP, d/b/a
Golden Living Center- Lancaster; GGNSC LANCASTER GP, LLC; GGNSC EQUITY
HOLDING, LLC; GGNSC ADMINISTRATIVE SERVICES LLC; GGNSC CLINICAL
SERVICES LLC; GGNSC HOLDINGS, LLC; GOLDEN GATE ANCILLARY, LLC,
Appellants

v.

JAMES D. MINICH, AS ADMINISTRATOR
FOR THE ESTATE OF MARY E. SHAFFER, DECEASED
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. Civ. 5-14-mc-00219)
District Judge: Honorable Gerald Austin McHugh, Jr.
_____

Submitted under Third Circuit LAR 34.1(a)
October 8, 2015

Before:  SHWARTZ, KRAUSE, and COWEN, *Circuit Judges*

(Filed: October 16, 2015)
_____

OPINION*

---

 * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Following the death of Mary E. Shaffer, the administrator of her estate—James D. Minich—filed a lawsuit in Pennsylvania state court against her caretakers, Golden Gate National Senior Care ("Golden Living"), alleging various tort claims that arose from her treatment and care. Golden Living countered by filing in federal court to enforce an arbitration agreement previously signed by Minich as Shaffer's power of attorney. Pursuant to a motion to dismiss by Minich, and in recognition of the contemporaneous state court proceedings, the District Court dismissed the action on *Colorado River* abstention grounds. We conclude that dismissal was improper, and we therefore vacate the District Court's order of dismissal and remand the case for further proceedings.

## I.    **Background**

Appellant Golden Living is a nursing home in Lancaster, Pennsylvania, which housed Shaffer until February 28, 2014. Upon Shaffer's admittance to Golden Living, Appellee Minich, who had power of attorney for Shaffer, signed an arbitration agreement, which provided that any dispute arising out of Shaffer's stay at Golden Living would be resolved by alternative dispute resolution, including mediation and, if necessary, binding arbitration.[1] On May 20, 2014, after Shaffer's death, Minich nonetheless commenced an action in the Lancaster County Court of Common Pleas as

---

[1] While the agreement was not countersigned by Golden Living, the language indicated that the agreement would be binding upon Golden Living with or without such signature.

2

administrator of Shaffer's estate.  Minich served his complaint on Golden Living on August 1, 2014, setting forth tort claims for neglect, survival, wrongful death, and punitive damages, based on Golden Living's treatment of Shaffer.

Seventeen days later, Golden Living commenced its federal court action to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  On the same day, to comply with filing deadlines and to avoid waiving any arguments, Golden Living filed preliminary objections in state court, seeking to invoke the arbitration agreement. Minich filed a motion to dismiss the federal action based on *Colorado River* abstention, which was granted by the District Court in a two-paragraph order on October 22, 2014. Golden Living timely appealed that dismissal to this Court.  Meanwhile, when the state court declined to enforce arbitration on February 4, 2015, Golden Living appealed that decision to the Pennsylvania Superior Court, where that case is now pending.

## II.     Jurisdiction

The District Court had diversity jurisdiction to hear this case under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

## III.    Legal Standards

*Colorado River* abstention provides that, under "exceptional circumstances," a federal court may abstain from its otherwise "virtually unflagging obligation" to assert jurisdiction over a case because (1) there is a parallel case in state court, and (2) after "careful[ly] balancing" a series of factors "heavily weighted in favor of the exercise of jurisdiction," maintaining the federal case would be a waste of judicial resources.  *Moses*

3

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 13-16, 19 (1983); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976).

The first step a district court must take before abstaining under *Colorado River* is to determine whether the federal and state proceedings are "parallel." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307-08 (3d Cir. 2009). Two proceedings generally are considered parallel when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues," *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (citation and internal quotation marks omitted), and when plaintiffs in each forum seek the same remedies, *see Harris v. Pernsley*, 755 F.2d 338, 346 (3d Cir. 1985).

If a court finds the proceedings to be parallel, it then carefully balances a host of factors to determine if abstention is warranted, bearing in mind that it should place a thumb on the scales in favor of granting jurisdiction. *See Moses H. Cone*, 460 U.S. at 16. We have defined the pertinent factors as: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Nationwide*, 571 F.3d at 308 (alterations in original) (internal quotation marks omitted) (quoting *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)).

On appeal, we review de novo the District Court's determination that the state and federal cases here were parallel. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). We review the District Court's balancing of the factors and subsequent decision to abstain for abuse of discretion. *Id.* However, "to the extent the district court evaluated a factor based on an erroneous view of the law, it necessarily abused its discretion and our review becomes plenary." *Id.*

## IV.    <u>Discussion</u>

The District Court issued a one-page order summarily concluding that this case presented the "exceptional circumstances" required to grant abstention under *Colorado River*. Upon an independent review of the record, we disagree.

At the outset, we observe that two proceedings typically are not considered parallel under our jurisprudence when they involve different parties, raise different issues, and contemplate different remedies. *Yang*, 416 F.3d at 204 n.5; *Harris*, 755 F.2d at 346. We need not make a determination on this threshold issue here, however, because we conclude abstention was improper under the second step of the *Colorado River* analysis: the balancing of relevant factors. *See, e.g.*, *Nationwide*, 571 F.3d at 308 (holding *Colorado River* abstention improper by presuming parallelism and resting its rationale solely on a determination that the relevant factors were not properly balanced). That is, even assuming the proceedings are parallel, the five *Colorado River* factors that

bear on this case,[2] on balance, weigh overwhelmingly in favor of exercising jurisdiction. We discuss each relevant factor in turn.

First, the alleged inconvenience of the federal forum provides little, if any, support for abstention. While the federal courthouse is over seventy miles from the Lancaster County courthouse where the state proceedings were filed and where the parties are based, the bulk of the litigation will be conducted via electronic filing and mail service on the parties. The attorneys for both parties are based in Philadelphia, less than two miles from the federal courthouse, and the moderate additional travel time required for the few in-court appearances that the parties may wish to attend poses little practical inconvenience—and certainly not one that overcomes the heavy burden required to justify abstention. *See Burns v. Watler*, 931 F.2d 140, 147 (1st Cir. 1991) (determining that a two-hour drive to the federal courthouse was not so inconvenient as to weigh in favor of *Colorado River* abstention).

The next factor, the desirability of avoiding piecemeal litigation, if anything, counsels in favor of exercising jurisdiction. While there is generally an interest in avoiding the inefficiencies of piecemeal litigation, we have determined that, if such litigation is necessary to advance a party's arbitration rights under the FAA, it should proceed "irrespective of any concomitant decline in judicial efficiency." *Nationwide*, 571

---

[2] The first *Colorado River* factor applies only to *in rem* cases and is therefore irrelevant in this case because there is no property dispute between the parties. *See, e.g.*, *Moses H. Cone*, 460 U.S. at 19 (ignoring the first factor where "[t]here was no assumption by either court of jurisdiction over any res or property").

6

F.3d at 308-09. Minich fails to identify any authority for his contention that *Nationwide* only applies where the state court proceeding does not provide a means of adjudicating the arbitration issue, and that proposition finds no support in the language of *Nationwide* or pertinent Supreme Court cases. Instead, the Supreme Court has stated that piecemeal litigation is generally appropriate to enforce arbitration rights under the FAA, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Moses H. Cone*, 460 U.S. at 20 (observing that the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement").

The third factor we consider, the order in which jurisdiction was obtained, is not a strict first-past-the-post test. Rather, we review both the filing date and the advancement of the litigation in each forum. *Moses H. Cone*, 460 U.S. at 21. Indeed, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions," and the federal court should exercise jurisdiction where, at the time a federal district court rules on abstention, "no substantial proceedings . . . ha[ve] taken place" in state court. *Id.* at 21-22. Here, at the time Golden Living filed in federal court, the complaint in the state court proceeding had been served a mere seventeen days earlier and the case had barely inched past its initial stages. The fact that the state court did not rule on Golden Living's preliminary objections until February 4, 2015 provides additional evidence that no substantial proceedings had taken place in the state court at the time the District Court dismissed the

federal suit in October of 2014. Thus, the District Court erred in finding that the "state court proceeding [was] at an advanced stage," App. 3, and this factor too weighs against abstention.

The fourth factor, whether state or federal law controls, also counsels in favor of exercising jurisdiction. While Pennsylvania law applies to the enforceability of the arbitration agreement, so too does the FAA, and "[a]lthough in some rare circumstances the presence of state-law issues may weigh in favor of [abstention], the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26 (citation omitted). Consequently, this factor cannot be said to tip the scales in favor of abstention.

Finally, we consider whether the state court will adequately protect the interests of the parties. This factor is generally a one-way ratchet, serving only to weigh *against* abstention where a state court is incapable of protecting a party's interests. *See id.* at 26-27 (concluding this factor weighs against abstention when it is questionable if a state court has the power to grant an order compelling arbitration under the FAA); *Ryan*, 115 F.3d at 200 (observing "this factor is normally relevant only when the state forum is *in*adequate"). Here, because we have no indication that the Pennsylvania courts are unable to protect the parties' interests, we attribute no weight to this factor. *See Spring City Corp.*, 193 F.3d at 172 (quoting *Ryan*, 115 F.3d at 200) (noting "the question whether parties' interests are protected is only relevant when they are not; that is, 'when the state court is adequate, . . . [this] factor carries little weight.'"); *see also Nationwide*,

8

571 F.3d at 308 (determining that this factor "[did] not significantly inform [an] analysis [where] the FAA grants concurrent jurisdiction to federal and state courts and thus expressly contemplates the state court as an adequate forum for adjudication").

Upon balancing the relevant factors, and mindful of our duty to "heavily weigh[] [them] in favor of the exercise of jurisdiction," we conclude that the "exceptional circumstances" required to abstain under *Colorado River* are not present in this case. *Moses H. Cone*, 460 U.S. at 16, 19. Because *Colorado River* abstention was the sole ground for the District Court's dismissal of the action, it did not have occasion to reach the merits of Minich's other arguments for dismissal. We leave those issues for the District Court to address in the first instance on remand.

\* \* \*

We conclude the District Court abused its discretion in determining that the *Colorado River* factors weighed in favor of abstention. Accordingly, we vacate the District Court's order and remand for proceedings consistent with this opinion.